UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENNY TALADAY, et al., | NO. C14-1290-JPD |
| Plaintiffs, | |
| v. | ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

I.   INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court upon the plaintiffs' September 3, 2015 motion for partial summary judgment. Dkt. 56. Defendant Metropolitan Group Property and Casualty Insurance Company ("MetLife") opposes the motion. Dkt. 57. The Court has considered the parties' submissions in support of and in opposition to plaintiffs' motion, the governing law, and the balance of the record, and hereby GRANTS plaintiffs' motion. Dkt. 56.

II.   BACKGROUND

This action concerns a MetLife Homeowners insurance policy issued to plaintiff Rosemarie Taladay for her home located at 8702 Lawndale Avenue Southwest in Tacoma, Washington. The homeowner's insurance policy includes property coverage for damage to

ORDER - 1

Ms. Taladay's home caused by fire. In May 2013, Ms. Taladay died. At the time, her son Gary Taladay was living with her in the home. On July 24, 2013, the Taladay home suffered an accidental fire. It is undisputed that Gary Taladay, as a relative of the named insured Rosemary Taladay who was living in the home at the time of the fire, constituted an unnamed insured under the insurance contract and is entitled to all corresponding policy benefits.

After the fire, Gary Taladay and his brothers had difficulty discovering the identity of Ms. Taladay's insurance company. The parties disagree as to exactly what transpired after the fire, and when MetLife first received notice of the incident. Before plaintiffs initiated this action, MetLife had not paid any portion of Gary Taladay's claim for insurance proceeds under the policy.

On July 24, 2014, plaintiffs filed a complaint against MetLife in the King County Superior Court for the State of Washington. Dkt. 1, Ex. 1. On August 20, 2014, MetLife removed the matter to this Court. Dkt. 1.

On April 29, 2015, plaintiffs filed an Amended Complaint alleging that MetLife did not fully compensate them under the insurance contract for (1) the full amount necessary to repair the structure of plaintiffs' home, (2) the damage to their personal property contained in the house, or (3) the cost of their additional living expenses and alternative home. Dkt. 29, Ex. 1 at 3. Plaintiffs further assert causes of action for violation of the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86 *et seq*., bad faith, and violations of the Washington Insurance Fair Conduct Act, RCW 48.30.015. *Id*. at 3-4.

On March 25, 2015, the Court granted a prior motion for partial summary judgment filed by plaintiffs confirming that the damage to the late Ms. Taladay's residence resulting from the accidental fire was a covered cause of loss under her insurance policy with Metlife. Dkt. 28. MetLife conceded that Ms. Taladay's insurance contact covered the accidental fire.

ORDER - 2

Dkt. 18 at 1 (conceding the "narrow, undisputed question" that "accidental fire is a covered cause of loss" under the subject contract).[1] On June 23, 2015, the Court ordered MetLife to re-issue a check in the amount of $9,460.00 to Mr. Gary Taladay for four months of loss of use of the Taladay residence, along with two checks for smaller sums owed to Heritage Restoration and 1-800-BoardUp. Dkt. 44. As part of that Order, the Court noted that "plaintiffs' acceptance of the $9,460.00 for the incurred cost of living in a motel as a result of the covered fire damage does not constitute a waiver of any claim Mr. Taladay may have that a larger sum is owed under the terms of the policy." *Id*. at 2 fn.2.

In the instant motion for partial summary judgment, which defendant opposes, plaintiffs are seeking an additional $24,161 for Mr. Taladay's loss of use of the Taladay home following the fire pursuant to the Loss of Use coverage provision of the insurance contract. Dkt. 56. Relevant to plaintiffs' motion, the Loss of Use coverage provision provides as follows:

**SECTION I – ADDITIONAL COVERAGES**

. . .

1. **Loss of Use**. The limit of liability for Loss of Use is the total limit for the coverage in A. and B. below.

    A. **Additional Living Expense/Fair Rental Value**. This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from fungus and mold. When a covered property loss makes that part of the residence premises where you reside not fit to live in, we will pay, at your choice, <u>either</u> of the following. However, if the residence premises is not your principle place of residence, we will not provide the option under paragraph 2. below.

---

[1] MetLife's opposition responded to what MetLife considered to be plaintiffs' allegations of bad faith and improper conduct resulting from MetLife's failure to confirm coverage or pay the insurance proceeds to the plaintiffs to date. Dkt. 18 at 2. In addition, MetLife asserted that although the cause of loss, i.e., accidental fire, is covered under the policy, it could not make a coverage determination as to specific loss to covered property until plaintiffs submitted an inventory of damaged property and receipts for additional living expenses. *Id*. at 7-11.

ORDER - 3

1. **Additional Living Expense**. We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living. Our liability will not excess the smallest of:
   a. payment for the shortest time to either repair or replace the **residence premises**. This period of time is not limited by the expiration of this policy;
   b. payment for the shortest time for your household to settle elsewhere, if you permanently relocate. This period of time is not limited by the expiration of this policy; or
   c. the limit of liability for Loss of Use as specified in the policy Declarations.

2. **Fair Rental Value**. We will pay the fair rental value of that part of the **residence premises** where you reside less any expenses that do not continue while the premises is not fit to live in. Our liability will not exceed the smallest of:
   a. payment for the shortest time to either repair or replace the **residence premises**. This period of time is not limited by the expiration of this policy;
   b. payment for the shortest time for your household to settle elsewhere, if you permanently relocate. This period of time is not limited by the expiration of this policy; or
   c. the limit of liability for Loss of Use as specified in the policy declarations.

Dkt. 56 at 138.

### III. DISCUSSION

A. <u>Summary Judgment Standard</u>

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000). A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

ORDER - 4

*Inc.,* 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of material fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence of insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.

B.   <u>Plaintiffs' Motion for Partial Summary Judgment</u>

Plaintiffs contend that MetLife breached the insurance policy's Loss of Use coverage provisions, which entitle Mr. Taladay to payments for either "additional living expenses" or "fair rental value" for the Taladay residence, at his option, due to the fact that Mr. Taladay was displaced by the July 24, 2013 fire. Dkt. 56 at 1.  As plaintiffs have elected to receive fair rental value rather than additional living expenses, plaintiffs are entitled to "payment for the shortest time to either repair or replace the residence premises" under the contract.  Dkt. 56 at 138.  Plaintiffs argue that it has been impossible to start repairs on the house since the date of the fire for numerous reasons, chief among them the fact that MetLife has not released sufficient funds to complete such repairs, which in turn prevents plaintiffs from being able to hire a general contractor to begin the process.  As a result, plaintiffs assert that they are entitled to loss of use payments for the full twenty-five (25) months that have passed since the fire, subject to the Loss of Use policy limit, as this is the "shortest time to either repair or replace the residence premises" under the circumstances.[2]

To calculate the payments owed to Mr. Taladay under the Loss of Use provision, plaintiffs use MetLife's Fair Rental Value estimate of $2,365 per month for the twenty-five

---

[2] To date, MetLife has only paid Mr. Taladay for four months of fair rental value.

(25) months that Mr. Taladay has been displaced since the fire. Twenty-five months times $2,365 per month equals $59,125, which exceeds the $33,621 Loss of Use policy limit. Thus, plaintiffs argue that they are entitled to the Loss of Use policy limit of $33,621, minus the $9,460 already paid by MetLife for fair rental value for four months, or a total of $24,161.

MetLife responds that although plaintiffs are entitled to receive fair rental value payments, "the coverage specifically provides that the insurance company will only pay for the *shortest amount of time* needed for the insured to repair, replace the property or relocate. In the over two-years since the loss, plaintiffs have made no effort to repair, replace or relocate." Dkt. 57 at 3 (emphasis added). MetLife argues that plaintiffs should have begun to repair their house during the twenty-five months since the fire because plaintiffs had access to $51,050.82 which MetLife paid to the mortgage company JP Morgan Chase Bank ("Chase") for actual cash value of the home on April 17, 2014. *Id*. at 5. MetLife further asserts that Tom Gibbons of Tersuli Construction Services inspected plaintiffs' home and estimated that it would take no more than six months to repair the structure after receipt of a building permit. Dkt. 58 (Gibbons Decl.) at ¶¶ 5-6. Because plaintiffs have not provided any evidence to contradict Mr. Gibbons' six-month estimate, MetLife contends that plaintiffs are only entitled to compensation for the six-month period in which the structure could reasonably have been repaired.[3]

In addition, MetLife contends that it is not obligated to pay fair rental value for the ten month period of time between the fire and the time when MetLife first received notice of the loss, because plaintiffs breached their duty of cooperation under the policy by failing to promptly notify MetLife of the fire. Dkt. 57 at 3. Metlife argues that although plaintiffs

---

[3] MetLife does not, however, explain why it has only compensated plaintiff for four months of Loss of Use coverage when its own expert has estimated that it would take a minimum of six months to repair the structure.

ORDER - 6

promptly notified Chase, and Chase failed to either advise plaintiffs of who insured their home or advise MetLife of the fire, Metlife still bears no fault and "as a long-term resident [of the home] Gary Taladay should have known who insured the home." *Id*. at 8.

Plaintiffs respond that MetLife's argument that plaintiffs breached a duty of cooperation under the contract by failing to timely notify MetLife of the fire is foreclosed by the Court's prior ruling that Mr. Taladay's insurance claim is covered under the policy. Dkt. 60 at 1 (citing Dkt. 28).[4] In addition, plaintiffs cannot afford to repair the house without first receiving the funds owed under their insurance contract with MetLife. MetLife has not paid for the cost of repairs, and has still not agreed to pay for the full cost of repairs when they are completed. Specifically, MetLife has not modified its March 15, 2015 estimate for $74,232 despite the fact that all the contractors who have evaluated the damage – including MetLife's expert Mr. Gibbons - have estimated that the actual cost will be at least $122,000. *Id*. at 4, 18. Although MetLife has released $51,000 to Chase which plaintiffs could apparently attempt to access in order to finance repairs, it is undisputed that $51,000 is grossly inadequate to complete the necessary repairs to make the house habitable. *Id*. at 7. Plaintiffs contend that "no contractor will perform the work without knowing whether it will be paid for that work," and therefore plaintiffs should not be penalized for the delay in beginning to repair the house. *Id*.

---

[4] If the Court were to find that the issue were not foreclosed, plaintiffs point out that telephone records demonstrate that Matthew Hollis of Heritage Restoration immediately assisted the Taladays after the fire by calling both Chase and MetLife Home Loans to notify them of the fire, as MetLife Home Loans was the original mortgage company and Chase had purchased the mortgage from MetLife Home Loans in March 2013, just a few months before the fire. Inexplicably, MetLife Home Loans did not notify its sister-company MetLife about the fire. Dkt. 60 at 3. Thus, plaintiffs contend that there is substantial evidence demonstrating that plaintiffs did not breach their duty of cooperation by neglecting to notify MetLife of the fire.

ORDER - 7

Accordingly, plaintiffs ask the Court to reject MetLife's arguments that "shortest time to either repair or replace the residence premises" should be interpreted to mean "theoretical, best-case scenario time." *Id*. at 4.  Plaintiffs contend that the provision should instead be interpreted to mean "the actual shortest time possible in light of the circumstances," and that this court should consider a prior case from this district that reached a similar conclusion when interpreting a nearly identical contract provision. *Id.* (citing *Garoutte v. Am. Family Mut. Ins. Co.*, No. C12-1787-BHS, 2013 WL 3819923, at *3 (W.D. Wash. July 23, 2013)).

### C. Plaintiffs are Entitled to Additional Payments for Loss of Use of the Home

The Court agrees with plaintiffs that there are no genuine issues of material fact in dispute and plaintiffs are entitled to partial summary judgment.  As discussed below, the parties' dispute concerns the proper interpretation of the Loss of Use provision of the insurance contract.  Interpretation of an insurance contract is a question of law.  *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002).  If there is an ambiguity in the contract, the Court must interpret insurance contracts in favor of the insured.  *Shotwell v. Transamerica Title Ins. Co.*, 91 Wash.2d 161, 167, 588 P.2d 208 (1978); *Panorama Vill. Condo Owners Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wash.2d 130, 137, 26 P.3d 910 (2001).  When interpreting a contract, the court should seek to determine and to effectuate the parties' mutual intent.  *Berg v. Hudesman*, 115 Wash.2d 657, 663, 801 P.2d 222 (1990).

It is undisputed that MetLife has a duty under the applicable Loss of Use contract provisions to pay Mr. Taladay, as an unnamed insured under the policy, fair rental value "for the shortest time to either repair or replace the residence premises." *See* Dkt. 56 at 138.  Thus, the question is whether the Court should construe the phrase "shortest time required to repair or replace the residence premises" to mean actual construction time if such repairs were to be immediately undertaken, or whether this phrase must be interpreted in relation to the actual

circumstances. If the Court were to accept MetLife's interpretation of the contract provision, plaintiffs would be entitled to fair rental value payments for a six-month period based on the opinion of MetLife's expert Mr. Gibbons that the house could be repaired within six months after receipt of a building permit. *See* Dkt. 58 (Gibbons Decl.) at ¶¶ 5-6.[5]

In *Garoutte v. American Family Mutual Insurance Company*, the court construed nearly identical language in a homeowner's insurance contract following an accidental fire. 2013 WL 3819923, *3-4 (W.D. Wash. July 23, 2015), Case No. C12-1787-BHS. The homeowners argued that American Family breached its undisputed duty to pay additional living expenses under the contract when it ceased making such payments once the Garouttes initiated the lawsuit. The insurance contract provided that American Family would pay such expenses "for the shortest time required to repair or replace the damaged property." *Id*. at *3. Just as Metlife argues in this case, American Family argued that it was only obligated to pay three months worth of additional living expenses based on the estimate in the appraisal award that the repairs could be completed in three months. *Id*. In other words, American Family asserted that the "shortest time required to repair or replace the damaged property" means actual construction time. *Id*.

The court rejected American Family's argument and granted plaintiffs' motion for partial summary judgment, noting that "even if this was a 'reasonable' construction that created an ambiguity in the contract, the Court must interpret insurance contracts in favor of the insured." *Id.* (citing *Shotwell v. Transamerica Title Ins. Co*., 91 Wash.2d 161, 167, 588 P.2d 208 (1978); *Panorama Vill. Condo Owners Bd. of Dirs. v. Allstate Ins. Co*., 144 Wash.2d 130, 137, 26 P.3d 910 (2001)). The court then interpreted the time required to repair the

---

[5] Plaintiffs have not presented any evidence to contradict Mr. Gibbons' six-month estimate, or challenge MetLife's estimate of fair rental value for the residence.

damaged property to include the actual circumstances and not simply an estimate of construction time. The court awarded additional living expenses for the time spent to fully assess the damage, the time the parties participated in an appraisal determination, the time between the appraisal award and the plaintiffs receiving full payment of that award, and the time to complete the repairs on the structure. *Id.*[6]

The Court agrees with plaintiffs that a similar construction of the phrase "shortest time to either repair or replace the residence premises" is appropriate in this case. To interpret the contract to mean "actual construction time" would be at odds with the purpose of the Loss of Use provision, which is intended to compensate plaintiffs for the loss of use of the residence until such time that it is actually repaired or replaced and plaintiffs are able to move back in. As in *Garoutte*, plaintiffs have been unable to repair their house since the fire. It is also undisputed that plaintiffs cannot afford to repair their house without receiving the funds owed under their insurance contract with MetLife.

MetLife's efforts to blame plaintiffs for this delay in making repairs, and deny fair rental value payments on this basis, are unpersuasive. In fact, MetLife's own conduct to date appears to be a primary cause of plaintiffs' delay, as MetLife has neither provided nor authorized sufficient funds for plaintiffs to hire a general contractor to begin such repairs.[7] Furthermore, MetLife has still not agreed to pay the full cost of repairs, despite the fact that all

---

[6] The Court agrees with MetLife's argument that the additional authority cited by plaintiffs, *Kochendorfer v. Metro. Prop. & Cas. Ins. Co.*, 2012 WL 1204714, at *1-4 (W.D. Wash. April 11, 2012), Case No. C11-1162-MAT, is highly distinguishable and therefore not helpful to resolving the issues currently before the Court. Dkt. 61; Dkt. 65.

[7] MetLife's argument that plaintiffs should also be penalized for being unable to retain a general contractor who is willing to begin such repairs with no guarantee of being paid in full is unpersuasive. Indeed, MetLife's own expert Tom Gibbsons conceded that under circumstances where a homeowner could not afford to pay him without receiving funds from the insurance company, he would not undertake such repairs without having some prior agreement with the insurance company. *See* Dkt. 60 at 27-28.

ORDER - 10

the contractors who have evaluated the damage have estimated the actual cost will be at least $122,000.[8]  As far as the Court is aware, MetLife has still not modified its March 15, 2015 estimate for $74,232.  *See* Dkt. 56 at 4.

MetLife argues that to interpret the contract in light of the actual circumstances would mean that plaintiffs could receive Loss of Use payments indefinitely up to the policy limit, which would be unjust and at odds with the parties' intent.  MetLife cites to a district court decision from North Carolina interpreting nearly identical contract language and holding that "the more natural reading of the living expenses clause is that Nationwide [Mutual Insurance Co.] will pay living expenses for the shortest time period required to repair the property or permanently relocate generally, *without regard to the insured's financial ability to fully rebuild the damaged property*.  Under this interpretation, [the insured] must show that seven months was not sufficient time to repair the property or permanently relocate."  *Christmas v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 435, 444-45 (E.D.N.C. 2014) (emphasis added).

The Court agrees with plaintiff, however, that the court in *Christmas* reached this conclusion by adding the words "without regard to the insured's financial ability to fully rebuild the damaged property" to the additional living expenses provision of the policy.  Washington law does not allow courts to add language to an insurance contract.  *See Weyerhaeuer Co. v. Aetna Cas. & Sur. Co.*, 123 Wash.2d 891, 913, 874 P.2d 142, 154 (1994) ("We decline to add language to the words of an insurance contract that are not contained in the parties' agreement").  Moreover, there is no risk that plaintiffs will receive Loss of Use benefits indefinitely, as the $33,621 limit on Loss of Use benefits specifically prevents such an outcome.

---

[8] As noted above, on behalf of MetLife, Mr. Gibbons estimated that repairs would cost $122,528.  On behalf of plaintiffs, Danny Anderton and Heritage Restoration, Inc. estimated that repairs would cost $130,086.  Dkt. 56 at 86, 184.

Finally, MetLife's contention that plaintiffs breached their duty of cooperation by failing to report the fire to MetLife immediately – despite plaintiffs' documented phone calls to Chase and MetLife Home Loans immediately after the fire – are unpersuasive.[9] MetLife's arguments in this regard appear to be an attempt to re-litigate the threshold issue of coverage. However, this Court has already ruled that the accidental fire at plaintiffs' home was covered by the insurance policy. As the issue of coverage is foreclosed, the parties' dispute regarding the facts and circumstances preceding MetLife's receipt of notice of the fire are not material.

Accordingly, the Court interprets the contract provision entitling plaintiffs to fair rental value payments for the "shortest time to either repair or replace the residence premises" to include the full twenty-five (25) months that have passed since the fire. This time period includes (1) the ten (10) months between the fire and when plaintiffs successfully initiated the claims process with MetLife, (2) the time that has transpired during this litigation, and (3) the time it will take to complete the repairs on the structure. As fair rental value payments for this period of time would clearly exceed the $33,621 Loss of Use policy limitation, plaintiffs are entitled to receive $33,621 minus the $9,460 already paid by MetLife for Loss of Use coverage for four months, or a total of **$24,161**.

//

---

[9] Although the parties' disagreement on this issue does not present a genuine issue of material fact, the Court does note that MetLife has not provided any explanation as to why its sister company, MetLife Home Loans, failed to notify MetLife about the fire after being contacted by plaintiffs' representative. MetLife also concedes that Chase, as the mortgage company, was obligated to report the fire to MetLife as soon as it received notice from plaintiffs. The Court declines MetLife's invitation to penalize plaintiffs for these entities' failings in this regard. MetLife also fails to cite to any authority, and the Court is aware of none, providing that non-named insureds or other beneficiaries of a homeowners insurance policy are legally obligated to know the identity of an insurer. *See* Dkt. 57 at 8.

IV.     CONCLUSION

Accordingly, plaintiffs' motion for partial summary judgment, Dkt. 56, is GRANTED. Defendant MetLife shall issue a check in the amount of $24,161.00 as reimbursement to Mr. Gary Taladay for loss of use of the home since the fire.  Payment shall be completed within fifteen (15) days of the date of this Order.

The Clerk is directed to send a copy of this Order to all counsel of record.

DATED this 16th day of October, 2015.

*/s/ James P. Donohue*

JAMES P. DONOHUE
Chief United States Magistrate Judge